IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDALLAH HAWA and | : | CIVIL ACTION |
| TERESA POWELL, | : | |
| | : | |
| Plaintiffs, | : | No. 15-4828 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| COATESVILL AREA SCHOOL DISTRICT, | : | |
| et al., | : | |
| | : | |
| Defendants. | : | |

**MEMORANDUM OPINION**

**MARILYN HEFFLEY, U.S.M.J.**                                                                                          February 12, 2016

In this action, Plaintiffs Abdallah Hawa ("Hawa") and Teresa Powell ("Powell") (collectively, "Plaintiffs") assert claims alleging violations of 42 U.S.C. §§ 1981, 1983, Title VII, 42 U.S.C. § 2000(e), the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1201 et seq., the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. § 951 et seq., the Rehabilitation Act, 29 U.S.C. § 794, the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., and the Pennsylvania Whistleblower Law, 43 Pa. Cons. Stat. § 1421 et seq. Defendant Coatesville Area School District ("CASD") moves for the dismissal of Counts II, IV, VI, VII, IX, X and XII of the Amended Complaint as to Hawa and Count XIII of the Amended Complaint as to both Plaintiffs. For the reasons that follow, CASD's Partial Motion to Dismiss will be granted as to Counts II, IV, VI, VII, IX, X and XII and denied as to Count XIII.

I.     **BACKGROUND**

Plaintiffs' Amended Complaint alleges as follows. Hawa is employed as the Director of Technology for CASD. He is of Lebanese-American descent. Amended Complaint (Doc No. 15) ¶¶ 17-18 ("Am. Compl."). Powell is employed as the Director of Middle School Education for CASD. She is of African-American descent. Id. ¶¶ 19-20. In or about late spring of 2013, Hawa issued a new cellular telephone to CASD's Athletic Director, James Donato ("Donato"). Id. ¶ 22. As a result, Donato returned his previously issued telephone to Hawa. Id. ¶ 23. On or about August 15, 2013, Hawa retrieved Donato's former telephone from storage and began clearing it for issuance to another employee. Id. ¶ 24. In so doing, he discovered numerous racist text messages exchanged between Richard Como ("Como"), CASD's former Superintendent, and Donato, referring to certain CASD employees in racially derogatory terms. Id. ¶ 25. In addition, he discovered text messages containing suspicious references to the use of taxpayer money for improper purposes. Id. ¶ 26. Hawa brought the text messages to the attention of Powell. Id. ¶ 28. Powell suggested that they bring the matter to the attention of Dr. Tonya Thames Taylor ("Taylor"), a CASD School Board member and President of the local chapter of the National Association for the Advancement of Colored People. Id. After reviewing the text messages, Taylor recommended that Hawa and Powell bring the messages to the attention of CASD's School Solicitor, James Ellison, Esquire ("Ellison"). Id. ¶ 29.

Ellison met with Hawa, Powell and Taylor on August 17, 2013 at Scott Middle School to review and discuss the text messages. Id. ¶ 31. Ellison stated that he would immediately apprise the President and Vice President of the CASD School Board of the test messages. Both Ellison and Taylor expressed concern regarding the text messages being made public. Id. They stated, however, that they would schedule a meeting with the School Board's finance committee to

discuss the matter. Id. ¶ 33. While exiting the building after the meeting concluded, Ellison noticed video surveillance cameras in the middle school parking lot and inquired whether they were functional. Id. Upon being informed by Hawa that the cameras were operational, Ellison directed Hawa to erase the camera footage of them in the parking lot so that no one would know that they had met. Id. ¶ 34. Hawa did not comply with that directive. Id.

Ellison informed the finance committee of the text messages and the members of the committee directed him to investigate further. Id. ¶ 36. Subsequently, upon being confronted with the text messages, Como admitted to sending them. Id. ¶ 37. Taylor informed Hawa and Powell that the finance committee had decided to allow Como to remain in his position as Superintendent until the end of the school year, at which time he would retire. Taylor told Hawa and Powell that this resolution would allow the CASD School Board to remedy the problem without making the text messages public. Id. ¶ 38. Following that event, Como began to "pester" Hawa on a daily basis, asking how the finance committee had become aware of the text messages and demanding that Hawa provide him with Donato's previous telephone that contained the text messages. Id. ¶ 41.

On or about August 22, 2013, Powell asked Taylor whether the entire School Board had been informed of the Como and Donato text messages and she replied that only the finance committee had been made aware of them. Id. ¶ 42. Fearing that the School Board was attempting to cover up the text messages, Powell wrote an anonymous letter to the full School Board, bringing the text messages to its attention. Id. On August 23, 2013, Taylor telephoned Powell and informed her that the School Board had received the anonymous letter and that she believed Hawa had authored it because it contained "numerous grammatical and typographical errors." Id. ¶ 43. Taylor referred to Hawa as a "turncoat" and stated that he had "messed up" by

3

informing the entire School Board of the text messages. Id. ¶ 44. Upon learning of this conversation from Powell, Hawa emailed the full text message transcript to the Chester County District Attorney's Office (the "District Attorney's Office "). Id. ¶ 45. On the same day, the full School Board held an emergency meeting regarding the text messages. Id. ¶ 46. At the meeting, Ellison informed the School Board that the District Attorney's Office had demanded that Donato's cellular telephone be turned over to it so that it could investigate the potential misuse of public funds referenced in the text messages.[1] Id. The School Board assigned Ellison to conduct an investigation into the text messages and to provide recommendations at its next executive session. Id. ¶ 47.

On or about August 26, 2013, Taylor informed Powell that the School Board planned to discuss an exit plan for Como in order to protect itself from liability. Id. ¶ 52. Under that exit plan, Como would resign rather than be terminated. Id. On or about August 27, 2013, Como called a directors meeting and informed those present that he was contemplating retirement. Id. ¶ 55. Upon receiving the results of Ellison's investigation, the School Board instructed Ellison to inform Como and Donato that they were being suspended without pay pending termination, unless they elected to resign. Id. ¶ 57. Both men agreed to resign. Id. ¶ 58. Subsequently, the School Board issued a press release on its website announcing that Como had decided to retire. The announcement did not mention Donato's resignation and did not mention the text messages. Id. ¶ 62.

Due to the abrupt nature of Como's retirement and Donato's resignation, members of the media made requests under Pennsylvania's Right to Know Law for information relating to their cellular telephone records. Id. ¶ 68. In response, Ellison had attorneys at his law firm research

---

[1] When Donato's telephone was provided to the District Attorney's Office, however, all of the incriminating text messages had been erased. Id. ¶ 51.

4

whether the School Board could withhold the text messages from disclosure. Id. ¶ 69. In response to press inquiries, the School Board stated that Como and Donato had submitted letters of resignation, but refused to comment further because the matter was the subject of an ongoing investigation by the District Attorney's Office and involved personnel issues. Id. ¶ 70. Hawa and Powell, believing that the School Board was involved in a cover-up, met with a reporter and provided the reporter with the entire text message transcript. Id. ¶ 71.

On or about September 24, 2013, Hawa and Powell attended a public School Board meeting and revealed themselves as the people who discovered and reported the racist text messages. Id. ¶ 75. Powell read a statement that accused Ellison and various School Board members of attempting to cover up the text messages. Id. ¶¶ 76-77. Following that meeting, Ellison focused his internal investigation almost exclusively on Hawa and Powell "in an attempt to terminate and/or discipline and/or force them out of their positions of employment." Id. ¶ 80. Toward that end, Ellison directed Acting Superintendent, Angelo Romaniello ("Romaniello"), and Director of Human Resources, Erika Zeigler ("Zeigler"), to document their interactions with Hawa and Powell and to specifically note when and if they deviated from school policies or procedures. Id. ¶ 81. In addition, Ellison directed attorneys in his law firm to conduct research regarding the School Board's ability to discipline or terminate Powell. Id. ¶¶ 83-90.

On or about September 27, 2013, Ellison engaged Reclamere, Inc. ("Reclamere"), a computer forensics company, and directed it to image the hard drives and servers in Hawa's IT Department. Id. ¶¶ 91-94. In order to access the servers, Ellison instructed Romaniello to call the IT Network Manager and obtain the list of passwords for the School District's servers. Id. ¶ 96. The IT Manager informed Romaniello that there was no list of passwords and that Romaniello should contact Hawa to obtain the passwords. Id. A dispute ensued in which

5

Romaniello demanded that the IT Manager, and then Hawa, himself, provide him with the passwords upon threat of discipline. Id. ¶¶ 96-106. As the dispute unfolded, Hawa informed the District Attorney's Office, which sent a letter to Ellison directing him to preserve his cellular phone and iPad, as well as all files on CASD's system for use in the investigation. Id. ¶¶ 101-02. Ultimately, Hawa relented and provided the passwords. Id. ¶ 107. Despite the District Attorney's Office's communications, Reclamere continued to image CASD's computer hard drives. Id. ¶¶ 110, 117-121. Ellison then instructed Reclamere to perform searches of the email accounts belonging to Powell and Hawa and two principals at CASD who were personal friends of Powell. Id. ¶ 140.

In October 2013, Hawa and Powell were subpoenaed to testify before and bring documents to a grand jury investigating the possible misuse of taxpayer funds by Como and Donato. Id. ¶ 122. At or around the same time, Hawa met with detectives from the District Attorney's Office in the Brenner Administration Building. Id. ¶ 125. Ellison directed Romaniello to threaten Hawa with discipline for "not doing his job" and disrupting the workplace." Id. On or about October 18, 2013, the day after Powell's scheduled testimony before the grand jury, Ellison instructed her to attend a surprise meeting with Zeigler regarding the events surrounding the Como and Donato text messages. Id. ¶¶ 128-29. Zeigler instructed Powell that she was not permitted to speak to her attorney prior to the meeting or to have her attorney present while she was questioned and that she would be terminated if she did not cooperate. Id. ¶¶ 130-31. Powell declined to respond to questions under those circumstances. Id. ¶ 131. Zeigler subsequently made further efforts to obtain an interview with Powell, but eventually abandoned her efforts after Powell questioned her demands in writing. Id. ¶133.

On October 22, 2013, the School Board met with Ellison to discuss retaining outside counsel to handle the matters related to the text messages going forward. Id. ¶ 144. Outside counsel was retained and instructed to review the conduct of Hawa and Powell in order to justify their terminations. Id. ¶¶ 144-47. The School Board subsequently took retaliatory actions against Powell, including denying her a 4% annual salary raise that was awarded to other employees, denying her request to temporarily assume the principal's role at a school where the previous principal had retired, stripping her of certain job duties, no longer affording her an office at CASD's central office building and structuring a new position for an Assistant Superintendent to require one more year of experience than she possessed. Id. ¶¶ 150-55.

As a result of the stress accompanying the School Board's actions, Powell was diagnosed in November 2014 with severe major depressive disorder, mania and post-traumatic stress syndrome. Id. ¶ 158. In December 2014, Powell requested and was granted medical leave pursuant to the FMLA. Id. ¶ 159. While Powell was on leave, the School Board's new Superintendent, Dr. Cathy Taschner ("Taschner"), instructed various principals throughout the district to ban her from all schools due to false accusations of malfeasance. Id. ¶ 160. Powell's FMLA leave was exhausted on or about May 13, 2015. Id. ¶ 161. Powell then requested that CASD grant her extended leave as a reasonable accommodation for her disabilities, and CASD granted Powell extended leave through June 30, 2015. Id. In May 2015, Powell requested that CASD permit her to utilize a sabbatical for restoration of health, pursuant to 24 Pa. Cons. Stat. § 11-1166, from July 1, 2015 through September 2016. On or about June 5, 2015, despite her eligibility for such a sabbatical, CASD denied her request. Id. ¶¶ 162-63.

In September 2014, Taschner began stripping Hawa of job duties, including removing his decision-making power with respect to purchasing software and equipment and excluding him

from crucial administrative meetings during which decisions were made regarding CASD's IT Department. Id. ¶¶ 164-66. In November 2014, CASD issued an unjustified letter of reprimand to Hawa for allegedly collecting funds for an unauthorized purchase. Id. ¶ 167.

Due to the shock and stress resulting from the School Board officials' conduct, Hawa was diagnosed with stress and an anxiety disorder in November 2014. Id. ¶ 168. In December 2014, Hawa commenced a medical leave pursuant to the FMLA. Id. ¶ 169. In May 2015, following the exhaustion of his 12-week FMLA leave, Hawa began an unpaid sabbatical for restoration of health as an accommodation of his disability. Id. At that time, Taschner removed Hawa's access to his CASD email account, barred him from CASD facilities and replaced him with an individual who was not disabled. Id. ¶¶ 170-71.

## II. DISCUSSION

### A. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 556-57 (internal quotation marks omitted)). "In light of Twombly, 'it is no longer sufficient to allege mere elements of a cause of action; instead a complaint must allege facts suggestive of [the proscribed conduct].'" Great W.

Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 177 (3d Cir. 2010) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)). "'[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. . . ." Great Western Mining, 615 F.3d at 177 (quoting Twombly, 550 U.S. at 556). It requires "'enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556). In determining the adequacy of a complaint, the Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to plaintiff." Warren Gen. Hosp. v. Amgen, Inc., 643 F.3d 77, 84 (3d Cir. 2011).

### B. Hawa Has Waived Counts II, IV, VI and VII[2]

In their brief in opposition to CASD's Partial Motion to Dismiss, Plaintiffs have chosen not to defend Hawa's claims alleging discrimination based on race and national origin. A party who fails to brief an issue waives that issue. Frey v. Grumbine's RV, No. 1:10-CV-1457, 2010 WL 4718750, at *8 (M.D. Pa. Nov. 15, 2010); D'Angio v. Borough of Nescopeck, 34 F. Supp. 2d 256, 265 (M.D. Pa. 1999). Accordingly, those claims will be dismissed with prejudice.[3]

---

[2] On page 1 of CASD's brief, Hawa's Section 1981 race discrimination claim is denominated as Count I. It is clear from the remainder of the brief, however, that CASD is seeking dismissal of Count II with respect to Hawa.

[3] Furthermore, those claims asserted by Hawa fail to state a claim upon which relief can be granted because the Amended Complaint contains no allegation that CASD acted out of racial animus or because of Hawa's national origin.

### C. Hawa Has Failed to State a Claim of Retaliation Under the ADA, the Rehabilitation Act or the FMLA

#### 1. The ADA

In Count IX of the Amended Complaint, Hawa alleges that CASD retaliated against him for requesting a reasonable accommodation under the ADA. Am. Compl. ¶ 214. The ADA provides as follows:

> (a) Retaliation
>
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
> (b) Interference, coercion, or intimidation
>
> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

42 U.S.C. § 12203.

The burden shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S 792, 802 (1973), applies to ADA retaliation claims. Shaner v. Synthes, 204 F.3d 494, 500 (3d Cir. 2000). Under that three-step framework, a plaintiff must first establish a prima facie case of retaliation. Id. If he or she does so, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employer's action." Id. If the employer carries that burden, the plaintiff must prove by a preponderance of the evidence that the reasons offered by the employer were a pretext for discrimination. Id. A plaintiff carries his or her burden to state a prima facie case of retaliation if he or she alleges: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."

Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). An adverse action by an employer is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

"'A prima facie case is an evidentiary standard, not a pleading requirement.'" Connelly v. Lane Constr. Corp., 809 F.3d 180, 789 (3d Cir. 2016) (quoting Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 510 (2002)). It, therefore, is "'not a proper measure of whether a complaint fails to state a claim.'" Id. (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 213 (3d Cir. 2009)). Instead, the measure of whether a plaintiff has adequately stated a claim is whether the complaint contains "sufficient factual allegations to raise a reasonable expectation that discovery will reveal evidence of the [necessary] elements." Id.

Here, Hawa has failed to carry his initial burden to plead facts that raise a reasonable expectation that he will be able to establish a prima facie case of retaliation. Hawa bases his claim on three alleged adverse actions CASD took after he had completed his 12-week FMLA leave and had begun his sabbatical. CASD removed his email access, restricted his access to school property and replaced him with another employee. Pl.'s Br. (Doc 31) at 6. It is important here that Hawa has not alleged that CASD has terminated his employment, demoted him, or taken any other action that materially affects his continued employment. Under Pennsylvania law, an employee who takes a sabbatical leave for restoration of health, in addition to receiving one-half of their salary, 24 Pa. Cons. Stat. § 11-1169, and full benefits, id. § 11-1170, is entitled upon completion of the sabbatical to be "returned to the same position in the same school or schools he or she occupied prior" to taking the sabbatical, id. § 11-1168(b). "The Supreme Court has defined an adverse employment action as a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a

11

decision causing a significant change in benefits.'" Reynolds v. Dep't of Army, 439 F. App'x 150, 153 (3d Cir. 2011) (quoting Burlington Indus. v. Ellerth, 524, 742, 761 (1998)). Hawa has cited to no authority that holds that removing an employee's access to the employer's computer system and excluding the employee from the employer's premises during a time when the employee is absent for an extended sabbatical could constitute an adverse action for purposes of a retaliation claim. Nor has he explained why an employee who is away for a period of up to one and one-half school terms, see 24 Pa. Cons. Stat. § 11-1166(a), would have need for access to his employer's email or to its facilities. These actions appear to be reasonable measures in light of the sensitivity of information contained in a school district's computer system, the security concerns relating to school facilities and the extended nature of a sabbatical leave. There is no reason to believe that these actions would "dissuade a reasonable worker from making or supporting a charge of discrimination." Burlington N., 548 U.S. at 68.

As for Hawa's allegation that CASD replaced him with an individual who was not disabled, Pennsylvania law requires that CASD return Hawa to the position he previously occupied when he returns from sabbatical. 24 Pa. Cons. Stat. § 11-1168(b). It does not require that the employer leave the position open during the time the employee is on sabbatical. Cf. Garabedian v. Lone Star Steakhouse & Saloon, No. 06-3115, 2007 WL 1795677, at *1 (E.D. Pa. June 20, 2007) (holding that the FMLA does not forbid an employer from finding an interim replacement for an absent employee; it requires the employee be reinstated upon the completion of his or her leave). Here, where CASD is required to return Hawa to the same position he previously occupied upon his return from sabbatical, the fact that it assigned someone else to perform the presumably important role of Director of Technology during his absence would not "dissuade a reasonable worker from making or supporting a charge of discrimination."

Burlington N., 548 U.S. at 68.  Any action that would reasonably dissuade Hawa from taking protected action would have to be known to him in order to have the necessary effect.  In this case, it is apparent that discovery would not enable Hawa to establish a prima facie case of retaliation and his claim, therefore, must be dismissed.

        **2.  The Rehabilitation Act**

Hawa has asserted in Count X of the Amended Complaint that CASD retaliated against him for seeking a reasonable accommodation of his disability in violation of the Rehabilitation Act.  Am. Compl. ¶ 218.  Applicable regulations under the Rehabilitation Act prohibit retaliation against an employee for seeking a reasonable accommodation of his or her disability as follows:

> "No recipient or other person shall intimidate, threaten, coerce, or discriminate against any individual for the purpose of interfering with any right or privilege secured by section 601 of the [Rehabilitation] Act or this part, or because he has made a complaint, testified, assisted, or participated in any manner in an investigation, proceeding or hearing under this part."

34 C.F.R. § 100.7.  To state a cause of action for retaliation requires a plaintiff to allege the same elements as are required to state a prima facie case for retaliation under the ADA, Krause, 126 F.3d at 500, which are: "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's action."  Devine v. Pittsburgh Bd. of Pub. Educ., No. 2:13-CV-220, 2015 WL 3646453, at *8 (W.D. Pa. June 10, 2015).  Hawa has alleged the same three actions as adverse employment decisions that he asserted were retaliatory in connection with his ADA retaliation claim, namely that CASD removed his access to his CASD email account, barred him from its facilities and placed another employee in his position.  Thus, Hawa's Rehabilitation Act retaliation claim must be dismissed for the same reason as his ADA retaliation claim.  Hawa has failed to allege facts to show that

discovery would permit him to establish the requisite element that an adverse employment action was taken against him as a result of his protected activity.

### 3. **The FMLA**

Hawa has alleged in Count XII of the Amended Complaint that CASD retaliated against him for taking a 12-week FMLA leave. Am. Compl. ¶ 226. The FMLA anti-retaliation provisions read as follows:

(a) Interference with rights

    (1) Exercise of rights

    It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter.

    (2) Discrimination

    It shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

(b) Interference with proceedings or inquiries

    It shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual--

    (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter;

    (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or

    (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter.

29 U.S.C. § 2615.

To prove retaliation under the FMLA, a plaintiff must allege that: "'(1) [he or] she invoked [his or] her right to FMLA-qualifying leave, (2) [he or] she suffered an adverse employment decision, and (3) the adverse action was causally related to [his or] her invocation of

rights.'" Budhun v. Reading Hosp. & Med. Ctr., 765 F.3d 245, 256 (3d Cir. 2014) (quoting Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 302 (3d Cir. 2012)).

Hawa again claims the same three events as his basis for alleging CASD made an adverse employment decision in response to his protected activity. Thus, Hawa's FMLA claim fails for the same reason as his other retaliation claims; Hawa has not alleged facts that suggest that discovery would permit him to show that he suffered a sufficient adverse employment decision. Accordingly, Hawa's FMLA retaliation claim must be dismissed.

### D. Plaintiffs' Whistleblower Claims in Count XIII are Not Time-Barred

Pennsylvania's Whistleblower Law requires that claims be asserted within 180 days after the occurrence of the alleged violation. 43 Pa. Cons. Stat. § 1424(a). CASD asserts the claims of both Powell and Hawa do not meet that requirement. CASD Br. (Doc. No. 22) at 35-36. CASD is mistaken. CASD concedes that the "latest possible alleged Whistleblower Law violation with respect to Powell occurred on or about June 5, 2015." Id. at 36. One hundred eighty days from that date was December 2, 2015. The Complaint in this case was filed on August 26, 2015 (Doc. No. 1), and consequently, Powell's Whistleblower Law claim was timely filed.[4]

CASD maintains that "the latest possible Alleged Whistleblower Law violation asserted with respect to Hawa occurred in or about November 2014 when [CASD] supposedly removed his email access, restricted his access to school property, and replaced him in his job." CASD Br. at 36 The Amended Complaint alleges, however, that those actions took place after May, 2015 when Hawa returned from his FMLA leave and began his sabbatical. Am. Compl. ¶¶ 169-

---

[4] Pursuant to Fed. R. Civ. P. 15(c)(1)(B), an amended complaint relates back to the date of the original complaint if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Here, the Amended Complaint unequivocally meets that standard.

71. Because the Complaint in this case was filed on August 26, 2015, Hawa's Whistleblower Law claim also was timely filed. Accordingly, CASD's Partial Motion to Dismiss is denied as to Count XIII.

### III. CONCLUSION

For the reasons discussed above, CASD's Partial Motion to Dismiss will be GRANTED as to Counts II, IV, VI, VII, IX, X and XII, and will be DENIED as to Count XIII. An appropriate Order follows.

Dated: February 12, 2016

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE