IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABDALLAH HAWA and<br>TERESA POWELL, | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | No. 15-4828 |
| | : | |
| v. | : | |
| | : | |
| COATESVILLE AREA SCHOOL DISTRICT,<br> et al., | : | |
| | : | |
| Defendants. | : | |

## **MEMORANDUM OPINION**

This matter has come before the Court on Defendant Coatesville Area School District's ("CASD") Motion to Quash Subpoenas Served Upon Mathew Haverstick, Esquire and Conrad O'Brien P.C. (Doc. No. 67). For the reasons discussed below, the Motion will be granted.

## **I.    BACKGROUND**

This action involves claims brought by CASD employees, Plaintiffs Abdallah Hawa and Teresa Powell (collectively, the "Plaintiffs"), against CASD and its former Superintendent, Angelo Romaniello ("Romaniello"), arising from their discovery of racist text messages regarding them exchanged between CASD administrators and from the actions the Defendants allegedly took against them in retaliation for their public disclosure of the text messages.[1] After the controversy regarding the text messages had erupted publicly, CASD hired attorney, Matthew Haverstick, Esquire ("Haverstick"), and his law firm, Conrad O'Brien P.C. ("Conrad")

---

[1] The factual allegations pertaining to this case are set forth in this Court's March 3, 2016 Memorandum Opinion (Doc. No. 45) and its May 4, 2016 Memorandum Opinion (Doc. No. 64) and thus, will not be repeated here.

(collectively, the "Attorneys"), to investigate a number of matters relating to various alleged misconduct of a previous CASD Superintendent, Richard Como, including irregularities in hiring practices, preference afforded to members of CASD's School Board, financial mismanagement, and misappropriation of funds as well as alleged overbilling and misappropriation of CASD technology by its former counsel.  See Investigative Report to the Board of School Directors for the Coatesville Area School District (Doc. No. 67-4, at 21-177).[2]  Also included in the investigation was the Plaintiffs' discovery of the racist text messages and the alleged attempts by Romaniello and CASD's former counsel to suppress public disclosure of the text messages, which included discussion of Romaniello's and former counsel's interactions with the Plaintiffs regarding the disclosure of the text messages.  Id. at 9-10.  In an effort to be transparent regarding various allegations of misconduct by CASD, CASD released the Report to the public.  Id. at 1-3.

The current dispute arises because Plaintiffs have issued subpoenas to CASD's Attorneys seeking production of:

> All documents relating or pertaining to Abdallah Hawa or Teresa Powell; [2] all communications with the Coatesville Area School District or any other person or entity regarding the Investigative Report To The Board of School Directors For The Coatesville Area School District that was released to the public on February 9, 2015; [3] any and all documents supplied by Coatesville Area School District or any other person or entity that were either reviewed or considered in conjunction with preparing the Investigative Report To The Board of School Directors For The Coatesville Area School District that was released to the public on February 9, 2015; [4] any notes, memoranda, or documents pertaining to any investigation conducted into the activities of Richard Como, James Donato, and/or any other employee of the Coatesville Area School District.

---

[2]  CASD's counsel also issued a supplemental report.  Doc. No. 67-8.  The two reports will be referred to collectively herein as the "Report."

Doc. No. 67-2, at 2 (Haverstick subpoena); Doc. No. 67-3, at 2 (Conrad subpoena).[3]

CASD moves to quash the subpoenas, asserting, inter alia, that they seek privileged information. CASD Mot. at 9-11. Plaintiffs argue that CASD has waived any claim of privilege over the responsive documents by publishing the Report. Pl.'s Opp. at 4-5. In response, CASD contends that its publication of the Report did not act as a waiver with respect to any attorney-client privileged information related to the Report that was not disclosed. CASD Reply (Doc. No. 96) at 4-8.

## II. DISCUSSION

There is no question that the work of "an attorney who investigates complaints and conducts interviews within a company or an organization retains the same entitlement to the attorney-client privilege as if he or she were offering pure legal advice." Ziner v. Cedar Crest Coll., No. 04-3491, 2006 WL 8409873, at *3 (E.D. Pa. May 30, 2006) (citing Upjohn Co. v. United States, 449 U.S. 383, 390 (1981)). Here, Plaintiffs argue that by releasing the Report CASD's attorneys had produced as the result of their investigation, CASD has waived its attorney-client privilege as to all documents that were consulted in the preparation of the Report as well as all related communications.

---

[3] Plaintiffs' counsel has advised that in subsequent negotiations, Plaintiffs limited their request as follows:

> (1) Any witness statements, communications, or documents which relate or pertain to: the employment of Hawa and/or Powell with CASD, their whistleblowing activities, or any legal action they have taken against CASD; (2) Any witness statements, communications, or documents that were utilized or considered in preparing Section III(I) and Section V(A), (C) of the Investigative Report, including any exhibits referenced therein. Additionally, Plaintiffs expressly excluded Mr. Haverstick's attorney-work product from these requests.

Pl.'s Opp. (Doc. No. 95) at 3.

It is true, as CASD contends, that a party generally waives the privilege if it voluntarily discloses a privileged communication to a third party. Westinghouse Elec. Corp. v. Republic of the Philippines, 951 F.2d 1414, 1424 (3d Cir. 1991). However, it also is well-recognized that a party may make a partial waiver of the attorney-client privilege with respect to attorney-client communications actually disclosed without waiving its attorney-client privilege in its entirety unless a partial waiver would be unfair to a party's adversary. Id. at 1426 n.12; In re Intel Corp. Microprocessor Antitrust Litig., 258 F.R.D. 280, 289 (D. Del. 2008); Wachtel v. Guardian Life Ins. Co., No. 01-4183, 2006 WL 1286188, at *1 (D.N.J. May 8, 2006); In re Linerboard Antitrust Litig., 237 F.R.D. 373, 388 (E.D. Pa. 2006). The "central element" in determining whether a partial waiver exists is the question of fairness. Net2Phone, Inc. v. Ebay, Inc., No. CIV. A. 06-2469 KSH, 2008 WL 8183817, at *10 (D.N.J. June 26, 2008) (citing Harding v. Dana Transport, Inc., 914 F. Supp. 1084, 1090 (D.N.J. 1996)). "The fairness component seeks to 'prevent prejudice to a party and distortion of the judicial process that may be caused by the privilege holder's selective disclosures . . . of otherwise privileged information.'" Id. (quoting In re Intel Corp., 258 F.R.D. at 290). Fairness prohibits a partial waiver "when a party attempts to use the communication in a litigation or where the party 'makes factual assertions, the truth of which can only be assessed by examination of the privileged communications.'" Id. (quoting In re Intel Corp., 258 F.R.D. at 290).

The doctrine of partial waiver is applicable in cases where attorneys conduct investigations on behalf of a client and the client then releases the attorney's report without releasing underlying documents and communications. See, e.g., Sullivan v. Warminster Twp., 274 F.R.D. 147, 153-54 (E.D. Pa. 2011); Ziner, 2006 WL 8409873, at *3-4; In re Linerboard, 237 F.R.D. at 387-89 (collecting cases). "Courts generally hold that disclosures that occur

4

outside the context of a judicial proceeding do not implicitly waive the privilege as to all communications on the same subject matter" where the disclosed material is not used by the client to gain an adversarial advantage in a judicial proceeding. Sullivan, 274 F.R.D. at 154 (citing In re von Bulow, 828 F.2d 94, 103 (2d Cir. 1987); In re Keeper of Records, 348 F.3d 16, 24 (1st Cir. 2003)).

In the present case, the Attorneys prepared the Report as part of a wide-ranging investigation of an array of improper and potentially unlawful activities allegedly carried out by CASD's former leadership that had become the subject of a publicly-reported investigative grand jury report. CASD Mot. Ex. 3, at 1. CASD, as a public entity, released the Report to provide transparency to its constituents as to a matter of significant public interest. Plaintiffs have not argued that CASD has made any strategic use of the Report in this litigation, that it relies on the Attorneys' investigation as a form of defense in this action or that it has "'made factual assertions, the truth of which can only be assessed by examination of the privileged communications.'" Net2Phone, 2008 WL 8183817, at *10 (quoting In re Intel Corp., 258 F.R.D. at 290). They have not articulated any basis on which nondisclosure of the communications and materials underlying the Report would impose any unfairness on them.[4] Nor have they argued,

---

[4] Plaintiffs rely upon Harding v. Dana Transp., Inc., in which the court ruled that an employer had waived the attorney-client privilege as to documents and communications underlying its counsel's internal investigation of allegations of sexual harassment. 914 F. Supp. 1084, 1094-96 (D.N.J. 1996). That case, however, provided a prototypical example of the circumstances in which permitting a partial privilege waiver would be unfair. In Harding, the employer sought to use its claim that it had conducted an adequate investigation into the allegations of sexual harassment as a substantive defense to its potential liability for a hostile workplace claim. Id. at 1096 (use of the fact of the investigation as a defense to liability required a waiver of the attorney-client privilege to permit plaintiff to evaluate the adequacy of the investigation); see id. at 1093-94 ("[A]n employer may avoid liability if its procedures for investigating and remediating alleged discrimination are sufficiently effective.") (quoting Bouton v. BMW of

(Footnote continued on next page)

or provided any basis for the Court to conclude that any of the non-privileged materials the Attorneys collected in their investigation are not available to them through ordinary discovery addressed to the materials' original sources.  Plaintiffs have merely alleged a blanket waiver of the attorney-client privilege for all materials consulted or obtained in the preparation of the Report and all communications relating to it.  Pl.'s Opp. at 4-6.  As the authority discussed above demonstrates, Plaintiffs' blanket-waiver argument is unavailing.  Accordingly, the Motion to Quash will be granted.

An appropriate Order follows.

Date: September 12, 2016

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE

---

North America, Inc., 29 F.3d 103, 106 (3d Cir. 1994)).  The use of the disclosed information as a substantive defense in Harding makes that case inapplicable to a case, such as this one, in which the client has made no use of the investigation as a defense.  See Zine, 2006WL 8408973, at *3 (distinguishing Harding on that basis).

Plaintiffs further rely on Freedman & Gersten, LLP v. Bank of America, in which the court permitted discovery of documents underlying an internal Suspicious Activity Report prepared by the defendant bank with respect to a dishonored check.  No. 09-5351 (SRC) (MAS), 2010 WL 5139874, at *3 (D.N.J. Dec. 8, 2010).  The court there did not order production of privileged communications relating to the internal investigative report but only of "documents and facts pertaining to the suspicious activity at issue in th[at] matter, which were created in the ordinary course of business."  Id.  To the extent the Attorneys utilized any documents that CASD created in the ordinary course of business in their Report, Plaintiffs have not suggested any reason why they cannot obtain such documents through discovery directed at CASD.